**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

|                                      |     |                         |
|--------------------------------------|-----|-------------------------|
| CHRISTI C. FREE,                     | )   |                         |
|                                      | )   |                         |
|     Plaintiff,   | )   |                         |
|                                      | )   |                         |
| v.                                   | )   | No. 2:15-cv-02404-SHM-tmp |
|                                      | )   |                         |
| FEDERAL EXPRESS CORPORATION,         | )   |                         |
|                                      | )   |                         |
|     Defendant.   | )   |                         |

---

**ORDER**

---

Plaintiff Christi C. Free brings this action against Defendant Federal Express Corporation for sex discrimination and retaliation in violation of 42 U.S.C. §§ 2000e, et seq. ("Title VII"). Before the Court is Defendant's May 31, 2017 Motion for Summary Judgment. (ECF No. 54; ECF No. 54-1.) Plaintiff responded on July 7, 2017. (ECF No. 61.) Defendant replied on August 4, 2017. (ECF No. 64.)

For the following reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

**I. Background**

Plaintiff has worked for Defendant since February 1988. (ECF No. 64-1 at 1161.)[1] For the past 19 years, Plaintiff has

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

been a Senior Manager of Hub Operations ("Senior Manager"). (Id.)

Plaintiff has unsuccessfully applied for a position as Global Operations Control Manager ("GOC Manager") several times. GOC Managers receive the same salary as Senior Managers. (ECF No. 61-2 at 921.) However, GOC Managers receive several benefits not available to Senior Managers. GOC Managers receive a "sick bank," which allows them to earn paid time off that can be used after sick leave days have been exhausted. (ECF No. 64-1 at 1183.) GOC Managers can receive jump seat privileges, which allow them to use Defendant's planes for personal travel at no cost. (Id. at 1185.) GOC Managers also have the opportunity to work four days a week, perform office work rather than outside work, and supervise salaried employees rather than hourly employees. (Id. at 1185-86.)

Plaintiff applied for GOC Manager in September 2010. (Id. at 1162; ECF No. 61-5 at 969.) She did not receive an interview. (Id. at 1162.) Plaintiff applied for GOC Manager again in February 2012. (ECF No. 64-1 at 1165.) She was interviewed but not hired. (ECF No. 61-5 at 969-70.)

On March 8, 2013, Defendant posted another opening for a GOC Manager position. (ECF No. 61-2 at 914.) Plaintiff applied. (ECF No. 64-1 at 1167.) On April 5, 2013, Plaintiff

was interviewed for the position. (ECF No. 61-2 at 926.) On April 8, 2013, Plaintiff learned that she had not been chosen for the position. (Id. at 931.) Rudy Cruz, a male, was hired instead. (ECF No. 64-1 at 1168) On April 10, 2013, Plaintiff filed an internal complaint of sex discrimination, alleging that she had not been selected for the March 2013 GOC Manager opening because of her gender. (Id. at 1171.)

On July 5, 2013, Defendant posted another GOC Manager position. (ECF No. 61-2 at 914.) Plaintiff applied. (Id. at 935.) On September 17, 2013, Plaintiff was interviewed for GOC Manager. (Id. at 935.) On September 26, 2013, Plaintiff learned that she had not been selected. (Id. at 938.) Debi Minnick, a female, was hired instead. (Id. at 923.)

On June 15, 2015, Plaintiff filed a *pro se* Complaint in this action. (ECF No. 1.) Plaintiff subsequently retained counsel and, on January 4, 2016, filed an Amended Complaint. (ECF No. 28.) The Amended Complaint alleges that Defendant discriminated against Plaintiff on the basis of sex and retaliated against Plaintiff for her internal discrimination complaint, in violation of Title VII. (Id. at 79-80.)

On May 31, 2017, Defendant filed its Motion for Summary Judgment. (ECF No. 54; cf ECF No. 54-1.) Plaintiff responded

on July 7, 2017.  (ECF No. 61.)  Defendant replied on August 4, 2017.  (ECF No. 64.)

## II.  Jurisdiction

This Court has jurisdiction over Plaintiff's federal-law claims.  Under 28 U.S.C. §§ 1331, U.S. district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." The Amended Complaint alleges that Defendant discriminated and retaliated against Plaintiff in violation of Title VII.  (ECF No. 28 at 79-80.)  Those claims arise under the laws of the United States.[2]

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party can meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case.  See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. App'x 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

---

[2] Because the Court has jurisdiction over Plaintiff's federal-law claims under 28 U.S.C. § 1331, it need not address Plaintiff's contention that the Court also has jurisdiction under 28 U.S.C. § 1343(4).

4

When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quotation marks omitted). The nonmoving party must do more than simply "'show that there is some metaphysical doubt as to the material facts.'" Adcor Indus., Inc. v. Bevcorp, LLC, 252 F. App'x 55, 61 (6th Cir. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Beckett v. Ford, 384 F. App'x 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the nonmoving party must adduce concrete evidence on which a reasonable juror could return a verdict in her favor. Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## IV. Analysis

### A. Pattern and Practice Claim

Plaintiff's Amended Complaint alleges that "Defendant's method of hiring result[ed] in a pattern and practice of discrimination based [on] gender in violation of 42 U.S.C. § 2000e et seq." (ECF No. 28 at 80.) Defendant contends that Plaintiff's claim should be dismissed because "the Sixth Circuit has held that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs." (ECF No. 54-1 at 167.) Plaintiff argues that "Defendant misunderstands [Plaintiff's] complaint. A 'pattern and practice' case is 'not a separate and free-standing cause of action . . . but is really merely another method by which disparate treatment can be shown.'" (ECF No. 61 at 877.)

The Sixth Circuit has held that "the pattern-or-practice method of proving discrimination is not available to individual

plaintiffs." Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004). "[A] pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual . . . decisions, it is inappropriate as a vehicle for proving discrimination in an individual case." Id. To the extent Plaintiff has attempted to bring a separate pattern-or-practice claim against Defendant under Title VII, that claim must be denied. Defendant's Motion for Summary Judgment is GRANTED on Plaintiff's pattern-or-practice claim.

**B. Gender Discrimination Claim**

Plaintiff alleges that she was not hired for the March 8, 2013 GOC Manager position because of her gender. (ECF No. 28 at 78; ECF No. 61-2 at 922.) A plaintiff claiming discrimination under Title VII "must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (internal quotations omitted). "A plaintiff can establish a claim of sex discrimination under Title VII by producing either direct or circumstantial evidence of discrimination." White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 238 (6th Cir. 2005) (citation omitted).

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at

least a motivating factor in the employer's actions." <u>Jacklyn</u>
<u>v. Schering-Plough Healthcare Prods. Sales Corp.</u>, 176 F.3d 921,
926 (6th Cir. 1999).  Such evidence "explains itself" and "does
not require the fact finder to draw any inferences to reach the
conclusion that unlawful discrimination was at least a
motivating factor." <u>Gohl v. Livonia Pub. Schs. Sch. Dist.</u>, 836
F.3d 672, 683 (6th Cir. 2016).  Plaintiff has not offered direct
evidence of sex discrimination.

Where there is circumstantial evidence of discrimination,
the court follows the three-step, burden-shifting framework
established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792
(1973).  First, Plaintiff must show that: (1) she belongs to a
protected class; (2) she applied for and was qualified for the
promotion; (3) she was considered for and denied the promotion
despite her qualifications; and (4) an individual of similar
qualifications who was not a member of the protected class
received the promotion.  <u>White</u>, 429 F.3d at 240.  If Plaintiff
meets this burden, the second step requires Defendant to respond
by articulating "a legitimate, non-discriminatory reason for its
decision" to not hire Plaintiff.  <u>Upshaw v. Ford Motor Co.</u>, 576
F.3d 576, 584 (6th Cir. 2009).  If Defendant meets this burden,
the third step requires Plaintiff to "bear[] the burden of
rebutting this proffered reason by proving that it was pretext

designed to mask discrimination."  Richardson v. Wal-Mart
Stores, Inc., 836 F.3d 698, 704 (6th Cir. 2016) (internal
quotations omitted).

### 1. Plaintiff's *Prima Facie* Case of Sex Discrimination

The parties do not dispute that Plaintiff belongs to a
protected class because she is a woman.  Whether Plaintiff
satisfies the second, third, and fourth elements depend on
whether the GOC Manager position was a promotion from the Senior
Manager position.  Plaintiff argues that moving from Senior
Manager to GOC Manager is a promotion.  (ECF No. 61 at 861-63.)
Defendant argues that the move from Senior Manager to GOC
Manager is a "voluntary . . . down-bid from [Plaintiff's]
current senior manager position."  (ECF No. 54-1 at 172.)

To determine whether a change in positions is a promotion,
a court considers whether the new position confers "an increased
salary, significantly changed responsibilities, a more
distinguished title, or a gain in benefits."  Mitchell v.
Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir. 2004).  "[A]
plaintiff's subjective impression concerning the desirability of
one position over another generally does not control with
respect to the existence of an adverse employment action."  Id.

The GOC Manager position did not offer Plaintiff a higher
salary than her Senior Manager position.  Plaintiff concedes

that her salary would have remained the same if she had received the GOC Manager position.  (ECF No. 61-2 at 921.)  Plaintiff argues that "she would have reached the maximum amount of pay within [her] pay grade more quickly, which ultimately would have resulted in more income" had she received the GOC Manager position.  (ECF No. 61 at 861.)  Defendant has offered evidence that Plaintiff was already at the top of her pay grade when she applied for GOC Manager in March 2013.  (ECF No. 64 at 1154; ECF No. 64-1 at 1187.)  Becoming a GOC Manager would not have increased Plaintiff's salary.

The GOC Manager position would not have changed Plaintiff's responsibilities significantly.  Plaintiff argues that being a GOC Manager would allow her to "deal with professional employees instead of hourly employees and perform inside office work[] rather than work outside in the weather."  (ECF No. 61 at 862.) Plaintiff's sole support for this claim is her declaration. (ECF No. 61-4 at 965.)  Although Plaintiff contends that she would have preferred work as a GOC Manager, she has not sufficiently explained why the alleged changes in job duties are a "significant change" from her responsibilities as a Senior Manager.  The evidence is insufficient for a reasonable juror to conclude that there was a significant change in responsibility.

Plaintiff has offered sufficient evidence that the GOC Manager position offered a more distinguished title and a gain in benefits. The GOC Manager position had "a number of superior qualifications, requiring special training and education." (ECF No. 61 at 861.) GOC managers had to obtain a dispatch license, which required employees to attend a six-week training course. (ECF No. 64-1 at 1189.) To demonstrate the prestige of the GOC Manager position, Plaintiff presents evidence that several other employees accepted lower pay grade GOC positions in return for "superior professional advancement opportunities." (ECF No. 61 at 862.) That evidence is sufficient to show that the GOC Manager position would have been more than a "semantic change[] in title" for Plaintiff. Blackburn v. Shelby Cnty., 770 F. Supp. 2d 896, 925 (W.D. Tenn. 2011).

The GOC Manager position also offered benefits that Plaintiff did not receive in her Senior Manager position. GOC Managers received a "sick bank," which allowed employees to "earn credit" that could "be used after sick leave days [had been] used," and "jump seat privileges, which allowed GOC employees to use the jump seat for personal travel." (ECF No. 61 at 862.) GOC managers also had "the ability to move freely between a four or five-day schedule." (Id.)

Defendant argues that these perquisites are not benefits because they would not have been available immediately to Plaintiff when she started as a GOC Manager. Plaintiff would continue to work five days a week during the training period for the GOC Manager position, and "would have to meet the necessary qualifications and the necessary background" before she became eligible for four-day work weeks. (ECF No. 64 at 1154-55.) Jump seat privileges "may be revoked." (Id. at 1154.) Plaintiff would also be unable to use the sick bank because she had not "exhausted her medical absence leave to a point she would have been eligible to receive sick bank." (Id. at 1154.)

Defendant's arguments are not persuasive. Had Plaintiff become a GOC Manager, she would have been eligible to receive additional benefits. Plaintiff was foreclosed from receiving those benefits as a Senior Manager. Although Plaintiff had not exhausted her medical leave, the sick bank is a benefit. One ill-timed accident could have caused Plaintiff to deplete her medical leave hours and rely on the sick bank. Privileges that may be revoked are privileges unless or until they are revoked.

Plaintiff has offered sufficient evidence to demonstrate a genuine issue of material fact about whether the move from Senior Manager to GOC Manager would have been a promotion. The GOC Manager position's distinguished title and increased

benefits were significant advantages over Plaintiff's Senior Manager position.  Plaintiff can establish a *prima facie* case of discrimination.

## 2. Defendant's Legitimate, Non-Discriminatory Reasons for Employment Action

The burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Upshaw, 576 F.3d at 585.  The defendant "need not *prove* a nondiscriminatory reason" for not promoting Plaintiff, but "need merely *articulate* a valid rationale."  Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996) (emphasis in original).

Defendant contends that it did not hire Plaintiff as a GOC Manager because Plaintiff did not interview well.  (ECF No. 54-1 at 181.)  The Sixth Circuit has recognized that a refusal to hire based on poor interview performance is a legitimate, non-discriminatory reason for an adverse employment action.  Plumb v. Potter, 212 F. App'x 472, 479 (6th Cir. 2007); Toledo v. Jackson, 207 F. App'x 536, 537 (6th Cir. 2006).  Defendant has met its burden of articulating a legitimate, non-discriminatory reason for failing to hire Plaintiff as GOC Manager.

## 3. Pretext

The burden shifts to Plaintiff to prove pretext.  A plaintiff can prove pretext by showing that the employer's

proffered reason for not hiring her (1) has no basis in fact; (2) did not actually motivate the employer's conduct; or (3) is insufficient to warrant the challenged conduct.  White, 429 F.3d at 245.  In a case such as this where an employer fails to promote, a plaintiff can establish pretext by showing that she is (1) "a plainly superior candidate, such that no reasonable employer would have chosen" the other applicant, or (2) "as qualified as[,] if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination."  Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 815 (6th Cir. 2011) (internal quotations and citations omitted).  The burden to show pretext requires a plaintiff only "to rebut, but not to disprove, the defendant's proffered rationale."  Griffin v. Finkbeiner, 689 F.3d 584, 593 (6th Cir. 2012) (internal quotations and citation omitted); see Chen v. Dow Chemical Co., 580 F.3d 394, 400 n.4 (6th Cir. 2009) ("At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.").

Plaintiff makes three arguments to show that Defendant's proffered reason is not credible.  First, Plaintiff alleges an unfair interview process with "inconsistent [questions] between management and non-management candidates" and a scoring process

that "was highly subjective and open to bias." (ECF No. 61 at
869-70.)  Second, Plaintiff argues that Defendant's proffered
legitimate reason is a pretext because Plaintiff had
significantly more experience than the managers who were
ultimately chosen.  (Id. at 871.)  Third, Plaintiff offers
several remarks by GOC leadership as evidence of discrimination.

Defendant does not contend that Plaintiff was not qualified
for the March 2013 GOC Manager position.  Indeed, Defendant
concedes that Plaintiff was interviewed for the position based
on her qualifications.  (ECF No. 61-2 at 926.)  A reasonable
jury could conclude that Plaintiff was as qualified, if not more
qualified, than the candidate chosen for the March 2013 GOC
Manager position.

Plaintiff has provided sufficient evidence from which a
reasonable jury could find that the interview panel scored
Plaintiff differently than male candidates.  For example, one
question asked candidates about their 5 and 10-year goals.  (ECF
No. 64-1 at 1174.)  Despite an answer similar to the answers of
the male candidates, Plaintiff received a score of 2, but the
male candidates received scores of 4 (out of 5).[3]  (Id. at 1175.)

---

[3]    Defendant objects to Plaintiff's contention, arguing that "Plaintiff's
subjective beliefs, conjectures, and unfounded conclusions that there was no
right or wrong answer for the interview question and that her answer was
'identical' to the answer provided by the male candidates are wholly
insufficient to establish a claim of discrimination or retaliation as a

Plaintiff also offers evidence that the interview panel pre-scored candidates before the interview and gave lower scores to female candidates. (Id. at 1182.)

Subjective assessments are not determinative of discrimination or bias when standing alone. Browning v. Dep't of the Army, 436 F.3d 692, 697 (6th Cir. 2006). Nevertheless, "inherently subjective" assessments "deserve careful scrutiny" because "[s]ubjective criteria . . . sometimes make it difficult to distinguish between lawful and unlawful employment actions." Philbrick v. Holder, 583 F. App'x 478, 485 (6th Cir. 2014) (citing Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 93 (6th Cir. 1982)); see Beck v. Buckeye Pipeline Servs. Co., 501 F. App'x 447, 450 (6th Cir. 2012). Evidence of Plaintiff's less favorable treatment during the interview process can support a finding that her gender was the genuine reason for Defendant's discriminatory action.

Evidence of discriminatory remarks by Defendant's employees also supports a finding of pretext. The Sixth Circuit has established a two-step process to analyze whether remarks are

---

matter of law." (ECF No. 64-1.) Defendant has offered no evidence to rebut Plaintiff's facts.
    Because the Court must construe the facts in the light most favorable to Plaintiff, the nonmoving party, Plaintiff's allegations are sufficient for a jury to find that Defendant scored Plaintiff differently than other candidates based on her gender. See Bazzi v. City of Dearborn, 658 F.3d 598, 602 (6th Cir. 2011).

indicative of discrimination.  The first step is to consider the identity of the speaker and whether a reasonable jury could conclude that the speaker was in a position to influence the adverse employment action.  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998).  Here, the comments are said to have been made by Paul Tronsor, the Vice President of GOC.  Although Tronsor was not part of Plaintiff's interview panel, he was the direct supervisor of one of the interviewers. (ECF No. 61 at 857.)  This evidence is sufficient for a reasonable jury to conclude that Tronsor "may have influenced the decision" not to promote Plaintiff.  Ercegovich, 154 F.3d at 355; see Johnson v. The Kroger Co., 319 F.3d 858, 868 (6th Cir. 2003) (finding that "the statements of managerial-level employees who have the ability to influence a personnel decision are relevant" to a finding of discriminatory intent); Risch v. Royal Oak Policy Dept., 581 F.3d 383, 393 (6th Cir. 2009) ("Discriminatory statements made by individuals occupying managerial positions can be particularly probative of a discriminatory workplace culture.").

The second step is to examine the substance of the remarks to determine their relevance to a plaintiff's claim that an impermissible factor motivated the adverse employment action. Ercegovich, 154 F.3d at 355.  "Although . . . a direct nexus

between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." <u>Id.</u>

> [W]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus.

<u>Id.</u> at 356.

Plaintiff offers evidence of the following remarks:

- Tronsor asked Plaintiff, "Why would you want to be part of the all-male environment over here in GOC?" (ECF No. 61 at 874.)

- Tronsor told a hiring manager not to hire Plaintiff for the GOC Manager position. (<u>Id.</u>)

- Tronsor encouraged someone to hire a female employee "because she is cute." (<u>Id.</u>)

- Tronsor made an inappropriate comment to a female employee about a dress she was wearing. (<u>Id.</u>)

- Tronsor asked a female employee to drink bourbon with him at 5 a.m. After she expressed hesitation, Tronsor persuaded her to drink with him in her room by saying, "it was no fun drinking alone." (<u>Id.</u>)

18

Although proof of these statements is circumstantial evidence, the Sixth Circuit has said that "[c]ircumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff." Ercegovich, 154 F.3d at 356; see id. (holding that "evidence of a . . . discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular . . . timeframe involved in the specific events that generated a claim of discriminatory treatment"). The remarks "are not 'conclusive proof'" of discrimination against Plaintiff, but "they can still 'add color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.'" Steeg v. Vilsack, No. 5:13-cv-00086, 2016 WL 6465915, at *2 (W.D. Ky. Oct. 28, 2016) (quoting Conway v. Electro Switch Corp., 825 F.2d 593, 597 (1st Cir. 1987)).

Plaintiff has produced sufficient evidence contradicting Defendant's proffered reason for failing to hire her as a GOC Manager to survive summary judgment. Taken together, evidence of Plaintiff's qualifications for the GOC Manager position, Defendant's inconsistent interview scoring of female and male candidates, and Defendant's discriminatory remarks raise a

question of fact as to pretext.  See Risch, 581 F.3d at 392
(internal quotations omitted) ("When the plaintiff offers other
probative evidence of discrimination, that evidence, taken
together with evidence that the plaintiff was as qualified as or
better qualified than the successful applicant, might well
result in the plaintiff's claim surviving summary judgment.").
Defendant's Motion for Summary Judgment is DENIED on Plaintiff's
claim of gender discrimination.

**C. Retaliation Claim**

Plaintiff alleges that Defendant did not hire her for the
July 5, 2013 GOC Manager position "in retaliation for making
complaints regarding gender discrimination in the hiring
process."  (ECF No. 28 at 79; cf. ECF No. 61-2 at 923.)  Because
Plaintiff offers circumstantial evidence of retaliation, her
claim is analyzed under the McDonnell Douglas framework
described above.

To establish a prima facie case of retaliation under Title
VII, a plaintiff must show that (1) she engaged in protected
activity under Title VII, (2) the defendant was aware of her
activity, (3) she was subjected to an adverse employment action
by the defendant, and (4) there was a causal connection between
the protected activity and the adverse employment action.
Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013).

The Court has already determined that Plaintiff suffered an adverse employment action when she was not promoted to a GOC Manager position. It is undisputed that Plaintiff's April 10, 2013 internal complaint was a protected activity. It is also undisputed that at least some of Defendant's employees who interviewed Plaintiff for the July 5, 2013 GOC Manager position were aware of Plaintiff's internal complaint alleging sex discrimination. (ECF No. 64-1 at 1180.) The dispute is whether Plaintiff can establish that there was a causal connection between her internal complaint and the adverse employment action.

To show a causal connection, a plaintiff must adduce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). A causal link can be shown "through knowledge coupled with a closeness in time that creates an inference of causation. . . . However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Nguyen, 229 F.3d at 566 (internal quotations omitted).

On April 8, 2013, Plaintiff learned that she had not been selected for the March 8, 2013 GOC Manager position. On April

10, 2013, she filed her internal complaint of discrimination. (ECF No. 61-2 at 931; ECF No. 64-1 at 1171.)  The next GOC Manager opening was posted in July 2013.  (ECF No. 61 at 866.) Plaintiff was interviewed for the position on September 17, 2013.  (ECF No. 54-1 at 164.)  Plaintiff learned on September 26, 2013, that she had not received the GOC Manager position. (ECF No. 61-2 at 938.)

That evidence is insufficient to establish a *prima facie* case of retaliation.  More than five months had elapsed between Plaintiff's complaint, the protected activity in question, and Defendant's alleged retaliatory action.  Five months is significantly longer than necessary for temporal proximity alone to be sufficient to prove a causal connection.  See <u>McNett v. Hardin Cmty. Fed. Credit Union</u>, 118 F. App'x 960, 965 (6th Cir. 2004) (finding causation when "only 13 days" separated protected activity from adverse action); <u>Shefferly v. Health Alliance Plan of Michigan</u>, 94 F. App'x 275, 285 (6th Cir. 2004) (stating that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination"); <u>Cooper v. City of N. Olmsted</u>, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation.").

Because a significant amount of time had elapsed between Plaintiff's internal complaint and the adverse employment action, Plaintiff must offer other evidence of retaliatory conduct to establish causality.  Little v. BP Exploration & Oil Co., 265 F.3d 357, 365 (6th Cir. 2001).  Plaintiff has not alleged or proven any other retaliatory conduct by Defendant. Although Plaintiff has demonstrated that Dave Lusk, a member of her interview panel for the July 5, 2013 GOC Manager position, became aware of Plaintiff's complaint, there is no evidence that Lusk engaged in retaliatory conduct.  (ECF No. 64-1 at 1179.)

Plaintiff had applied for, but not received, a position as GOC Manager three times before filing her internal complaint. (ECF No. 61 at 857.)  Defendant had decided not to hire Plaintiff as a GOC Manager just months before failing to hire her for the July 5, 2013 position.  It would be unreasonable to conclude that "the adverse action would not have been taken" had Plaintiff not filed her complaint.  Nguyen, 229 F.3d at 563.

Plaintiff has not made a *prima facie* case for retaliation in violation of Title VII.  Summary judgment is GRANTED on Plaintiff's claim for retaliation.

### D. Punitive Damages

Defendant asks the Court to dismiss Plaintiff's claim for punitive damages.  (ECF No. 54-1 at 185-86.)  Defendant argues

that Plaintiff "offer[s] no evidence to support a conclusion that [Defendant's employees] possessed the requisite authority to impose punitive damages on Defendant." (Id. at 186.) Defendant also argues that summary judgment is appropriate because Defendant "has engaged in good faith efforts to comply with Title VII by implementing written policies in the workplace." (Id.)

Punitive damages are recoverable in a Title VII action when the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). A Title VII plaintiff seeking punitive damages must establish: (1) the defendant acted with malice or reckless indifference to the plaintiff's federally-protected rights, and (2) the defendant is liable for the agent's actions. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 539 (1999). Even if the plaintiff presents evidence establishing those elements, the defendant may avoid punitive damages if it makes "good-faith efforts to prevent discrimination in the workplace." Id. at 546 (internal quotations removed).

Even assuming Plaintiff could satisfy the first two elements, Defendant would not be liable because it has

established that it is engaged in good faith efforts to comply with Title VII.  The Court must consider whether Defendant has adopted an anti-retaliation policy and "effectively publicized and enforced its policy."  Parker v. Gen. Extrusions, Inc., 491 F.3d 596, 603 (6th Cir. 2007).

Defendant has adopted an anti-discriminatory policy and publicized it.  Defendant has provided evidence that its "discrimination, harassment, and retaliation policies . . . are included in the FedEx Employee Handbook, in the FedEx People Manual, and are maintained on FedEx's intranet."  (ECF No. 61-2 at 914.)  Defendant has also maintained policies to prevent retaliation.  (ECF No. 64-1 at 1202.)

Defendant has provided evidence that it enforces its anti-discrimination policy.  Defendant conducted an investigation following Plaintiff's complaints.  (ECF No. 64-1 at 1178, 1180.) The investigation appears to have been conducted in good faith. Plaintiff concedes that, following her internal complaint, Defendant changed its hiring policy to address Plaintiff's grievances.  (ECF No. 61-2 at 916, 918.)

This evidence reveals that, although Defendant's employees may have discriminated against Plaintiff, Defendant did not act in reckless disregard of Plaintiff's rights under Title VII. There is no genuine dispute of material fact about whether

Defendant engaged in good faith efforts to comply with Title VII.  Defendant's Motion for Summary Judgment on Plaintiff's claim for punitive damages is GRANTED.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.


So ordered this 7th day of March, 2018.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE
